UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

BERNARDO CRUZ-MOSQUERA         )
                               )
      Plaintiff,              )   3:10-cv-00594-RCJ-VPC
                               )
      v.                      )   **REPORT AND RECOMMENDATION**
                               )   **OF U.S. MAGISTRATE JUDGE**
                               )
K. GURRIES, ET AL.             )
                               )   June 14, 2011
      Defendants.             )
_____)

      This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion to dismiss (#9).[1] Plaintiff opposed (#11) and defendants replied (#12). The court has thoroughly reviewed the record and recommends that defendants' motion to dismiss (#9) be granted.

## I. HISTORY & PROCEDURAL BACKGROUND

      Plaintiff Bernardo Cruz-Mosquera ("plaintiff"), a *pro se* inmate, is currently incarcerated at Nevada State Prison ("NSP") in the custody of the Nevada Department of Corrections ("NDOC") (#6). After the court's screening of plaintiffs complaint pursuant to 28 U.S.C. § 1915A, his sole remaining claim alleges excessive force in violation of the Eighth Amendment for events that occurred while plaintiff was incarcerated at Northern Nevada Correctional Center ("NNCC") (#5, p. 3-4). Specifically, plaintiff alleges that on September 11, 2009, defendants placed him in handcuffs, punched him in the face and body, kicked him, twisted his arms and legs, and shot him with a taser gun. *Id.* at 3. Plaintiff claims he lost consciousness due to the attack and suffered a gash to his head, a swollen ankle, and several scrapes and bruises. *Id.*

      Defendants filed a motion to dismiss plaintiff's complaint for failure to exhaust his

---

[1] Refers to the court's docket numbers.

1  administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA") and Administrative
2  Regulation ("AR") 740 (#9).  Defendants argue that plaintiff timely submitted an informal level
3  grievance related to the alleged attack on February 17, 2010. *Id.* at 4.  However, defendants state that
4  the "grievance was denied as improper because it dealt with multiple issues." *Id.*  Defendants
5  explain that "[p]laintiff was directed to file a separate grievance for each issue but he failed to do
6  so." *Id.*  Plaintiff appealed the deficient grievance to the first and second levels and "was informed
7  at each level of appeal that his grievance was procedurally defective." *Id.*  Defendants believe that
8  plaintiff's refusal to abide by AR 740 constitutes abandonment of his claim and failure to exhaust
9  his administrative remedies. *Id.*

10  To support these assertions, defendants attach an affidavit authenticating a copy of NDOC
11  AR 740, and an affidavit authenticating a copy of plaintiff's inmate issue history and grievance forms
12  for grievance 20062892613 (#'s 9-1, 9-2 & 9-3).  The NOTIS report for this grievance indicates that
13  on February 17, 2010, plaintiff submitted a first level grievance, which the NDOC returned on March
14  5, 2010 (#9-3, p. 4).  Based upon the attached copies of plaintiff's grievance forms, it appears that
15  this grievance should have been coded as an informal level grievance, as it was filed on an informal
16  level grievance form. *Id.* at 6.  NDOC marked the grievance form received on February 12, 2010.
17  *Id.*  A detailed response is not listed for this grievance in NOTIS or on the original forms. *Id.* at 4,
18  6.  NOTIS also shows that on April 2, 2010, NDOC refused to accept plaintiff's first level grievance,
19  noting: "[Plaintiff's] grievance is rejected as [plaintiff's] grievance contains multiple issues . . . .
20  Grievances can only contain one issue.  You may resubmit within time frame grievances containing
21  single issues." *Id.* at 4.  On July 2, 2010, NDOC again denied plaintiff's second level grievance
22  stating: "On 4/02/2010, the First Level grievance was rejected due to multiple issues.  You are out
23  of the time frame to submit a disciplinary appeal.  The excessive force is also out of the time frame
24  because you did not submit correctly, as instructed.  Grievance denied." *Id.*

25  In his opposition, plaintiff states that "defendants have not presented an accurate depiction
26  of the exhaustion of [plaintiff's] administrative claim" (#11, p. 3).  Plaintiff states that he filed an
27  informal level grievance on February 4, 2010, to which the NDOC did not respond. *Id.* at 4.

Plaintiff says then he submitted a first level grievance on March 25, 2010. *Id.* NDOC returned the informal level grievance and the first level grievance, attached to a memorandum dated April 5, 2010. *Id.* Plaintiff says he did not receive this response until two weeks later and that it is only applicable to the first level grievance, not the informal level grievance. *Id.* Plaintiff then claims that NDOC prepared and submitted a second, first level grievance with a back date of March 8, 2010. *Id.* Plaintiff states that he did not submit this grievance. *Id.* Plaintiff submitted a second level grievance on April 21, 2010, and NDOC responded on August 12, 2010. *Id.* at 5. Plaintiff notes that the total grievance time was 161 days, while only 75 days are authorized. *Id.* Plaintiff attaches a copy of his grievance forms that is identical to the forms submitted by defendants. *Id.* at 11-26.

In their reply, defendants state that "Plaintiff appears to argue that because his grievance was addressed at each level, he properly exhausted" (#12, p. 2). However, defendants claim that "the only grievance Plaintiff filed was rejected as improper because it dealt with multiple issues." *Id.* NDOC informed plaintiff "that he was required to file a proper grievance for each issue he wished to have addressed." *Id.* Plaintiff failed to do as directed, resulting in the failure to exhaust his administrative remedies. *Id.*

The court notes that the plaintiff is proceeding *pro se*. "In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

**A.   Discussion**

Failure to exhaust is an affirmative defense under the PLRA rather than a jurisdictional requirement, and defendants bear the burden of raising and proving that the plaintiff has not exhausted. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Wyatt v. Terhune*, 315 F.3d 1108, 1117 n.9 (9th Cir. 2003), *cert denied*, 540 U.S. 810 (2003). Inmates are not required to specifically plead or demonstrate exhaustion in their complaints; rather, it is the defendant's responsibility to raise the issue in a responsive pleading. *Jones*, 549 U.S. at 216.

3

1     Failure to exhaust is treated as a matter in abatement, not going to the merits of the claim, and is properly raised in an unenumerated Rule 12(b) motion. *Wyatt*, 315 F.3d at 1119. The court may look beyond the pleadings to decide disputed issues of fact without converting the motion into one for summary judgment; however, "if the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." *Id.* at 1119-20, *as noted in O' Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1059 (9th Cir. 2007); *see also Rizta v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365 (9th Cir. 1988) ("[F]ailure to exhaust nonjudicial remedies should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.").

    **1.**    **Prison Litigation Reform Act of 1996**

    The PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

    Although once within the discretion of the district court, the exhaustion of administrative remedies is now mandatory. *Booth v. C.O. Churner*, 532 U.S. 731 (2001). Those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (citing *Booth*, 532 U.S. at 739-40 n.5). Even when the prisoner seeks remedies not available in the administrative proceedings, notably money damages, exhaustion is still required prior to filing suit. *Booth*, 532 U.S. at 741. Recent case law demonstrates that the Supreme Court has strictly construed section 1997e(a). *Id.* at 741 n.6 ("We will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

    Plaintiffs must properly exhaust nonjudicial remedies as a precondition to bringing suit. The PLRA requires "proper exhaustion," meaning that the prisoner must use "all steps the agency holds out, and doing so *properly* (so that the agency addresses the merits)." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Requiring exhaustion prior to filing suit furthers the congressional objectives of the PLRA as set forth in *Porter v. Nussle*, 534 U.S. 516, 524-25. *See id.* at 1200.

**2.     NDOC Procedures**

"Applicable procedural rules [for proper exhaustion] are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218.

The NDOC grievance procedure is governed by AR 740 (#9-2, p. 2-39). Defendants attach a copy of AR 740 to their motion. *Id.* In order for plaintiff to exhaust available remedies, AR 740 requires the following: (1) an informal review level, which "shall be reviewed and responded to by the inmate assigned caseworker" in consultation with other appropriate staff; (2) a first level formal grievance, which "shall be reviewed and responded to by the Warden;" and (3) a second level grievance, which "shall be reviewed and responded to by either the Assistant Director of Operations, Assistant Director of Support Services, Offender Management Administrator, Medical Director, or Correctional Programs Administrator." *Id.* at 11.

Once received, NDOC logs informal grievances into a tracking system. *Id.* at 14. The caseworker assigned to the grievance will provide the inmate with a response within twenty-five days, unless more time is required to conduct further investigation. *Id.* at 15. Inmates may proceed to the next grievance level if they do not receive a response within the time frame indicated in the regulation. *Id.* at 14. "Failure . . . to submit a proper Informal Grievance form . . . within the time frame noted above shall constitute abandonment of the inmate's right to pursue resolution of that claim at any level of the Inmate Grievance Procedure." *Id.* If the inmate is not satisfied by NDOC's response to his informal grievance, he may appeal the decision within five days by filing a first level grievance. *Id.* at 16-17. NDOC will provide a response within twenty days of receipt of the first level grievance. *Id.* at 17. If a first level grievance "does not comply with procedural guidelines" NDOC will return the grievance to the inmate unprocessed with instructions. *Id.* Finally, if the inmate is not satisfied with the first level grievance outcome, he may file a second level grievance, to which the NDOC will respond within twenty days. *Id.* at 17-18. Upon completion of the grievance process, inmates may pursue civil rights litigation in federal court.

**B. Analysis**

Defendants believe that plaintiff's complaint should be dismissed because plaintiff failed to

5

1  file a grievance that complies with AR 740.  Namely, plaintiff's informal grievance included several
2  issues, while the regulation requires a separate grievance for each issue.  NDOC responded to
3  plaintiff's first level grievance alerting him to the fact that he needed to file separate, conforming
4  grievances, but plaintiff did not follow this instruction.  Therefore, defendants believe that plaintiff
5  abandoned his claims.  Plaintiff argues that he did proceed through each grievance level and that
6  NDOC did not timely respond to his grievances.  Therefore, plaintiff believes that he did exhaust his
7  remedies.

8  From the court's review of plaintiff's grievance forms and NOTIS inmate issue history, it
9  appears that plaintiff filed an informal level grievance on or around February 12, 2010.  A response
10 is not listed for this grievance in NOTIS or on the grievance forms.  Therefore, according to AR 740
11 plaintiff was entitled to advance this grievance to the next level after not receiving a response within
12 the time frame noted in the regulation.  Plaintiff did so by filing a first level grievance on March 25,
13 2010.  Again, according to the process outlined in AR 740 for procedurally deficient grievances,
14 NDOC returned plaintiff's first and informal level grievances, stating that plaintiff may only grieve
15 one issue per grievance form.  The NDOC directed plaintiff to resubmit his grievances on separate
16 forms.  Plaintiff did not comply with this instruction and instead filed a second level grievance.
17 Again, NDOC stated that plaintiff's first level grievance was rejected and noted that due to plaintiff's
18 failure to respond to NDOC's guidance regarding the refiling of his grievances, he was now outside
19 of the allowable time frame for grievance filing.  NDOC denied plaintiff's second level grievance.

20 Plaintiff did not submit a proper grievance detailing his allegation of excessive force by
21 defendants.  Plaintiff first abandoned his grievance by not complying with NDOC's instructions to
22 file proper, separate grievances for each of his issues.  Plaintiff again abandoned his claims by failing
23 to file a procedurally sound grievance within the time frame allotted in the regulation.  While
24 plaintiff points out that defendants were untimely, this fact did not affect plaintiff's grievances.
25 Plaintiff exercised his right, according to the regulation, to advance his grievance to the next level
26 absent a timely response from the NDOC.  However, plaintiff failed to advance a procedurally
27 adequate grievance; therefore, he did not exhaust his administrative remedies according to AR 740

and the PLRA. As a result, plaintiff's complaint is dismissed without prejudice.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that defendants met their burden of proving that plaintiff failed to exhaust his administrative remedies for his Eighth Amendment claim against defendants. This is plaintiff's sole claim after screening; therefore, the court recommends that defendants' motion to dismiss plaintiff's complaint (#9) be **GRANTED**. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion to dismiss (#9) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that plaintiff's complaint (#6) be **DISMISSED WITHOUT PREJUDICE**.

**DATED**: June 14, 2011.

_____
**UNITED STATES MAGISTRATE JUDGE**